### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD PAGAN, | : | |
| Petitioner, | : | CIVIL CASE NO. |
| | : | 3:16-CV-00601 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | OCTOBER 25, 2021 |
| Respondent. | : | |

### RULING ON AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (DOC. NO. 40)

## I.    INTRODUCTION

In this five-year-old habeas case, the Second Circuit has twice authorized the petitioner, Ronald Pagan, to file a successive habeas petition pursuant to section 2255 of title 28 of the United States Code.  See Mandate of the USCA (Doc. No. 8); Mandate of the USCA (Doc. No. 29).  The court granted Pagan's request to consolidate the briefing schedule for both his Petitions, see Order (Doc. No. 32), and on June 16, 2021, he filed his Amended Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  See Am. Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Pet. to Vacate") (Doc. No. 40); Mem. in Supp. of Am. Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Pet.'s Mem.") (Doc. No. 40-1).

In his Petition, Pagan first relies on the Supreme Court's decision in U.S. v. Davis, 139 S.Ct. 2319 (2019), to argue that his conviction in Count Three charging him with using or carrying a firearm during and in relation to a crime of violence "is unconstitutional because it is predicated on conspiracy, which is not a crime of violence."  Pet. to Vacate at 1.  Second, he argues that his life sentence on Count Two

1

is also unconstitutional in light of <u>Miller v. Alabama</u>, 567 U.S. 460 (2012), "because [Pagan] was 19 years old at the time of his offense."  <u>Id.</u>

The respondent, the United States ("the Government"), opposes Pagan's Petition.  <u>See</u> Gov't's Mem. in Opp'n to Pagan's Am. Mot. Under 28 U.S.C. § 2255 ("Gov't's Mem.") (Doc. No. 44).  Pagan, in turn, has filed a Reply Memorandum responding to the Government's objections.  <u>See</u> Reply Mem. in Supp. of Mot. Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Pet.'s Reply") (Doc. No. 45).

For the reasons set forth below, Pagan's Petition is denied.

## II.    FACTUAL BACKGROUND

The facts of this case are well documented.  <u>See, e.g.</u>, <u>United States v. Feliciano</u>, 223 F.3d 102, 107-110 (2d Cir. 2000), <u>cert. denied</u> 532 U.S. 943 (2001).  In brief, Pagan joined the Meriden chapter of the Los Solidos gang when he was just 15.  <u>See</u> <u>United States v. Pagan</u>, No. 3:97-CR-00204, Ltr. from Ronald Pagan to Court at 4 (Doc. No. 512-1).  He had a traumatic childhood and "became lost" in Los Solidos, "[choosing] the streets over [his] household" and coming to see the "gang life [that] was presented [as a] positive."  <u>Id.</u>

By age 19, Pagan was "a lost traumatized teenager."  <u>Id.</u> at 7.  He was also the "warlord" of Los Solidos' Meriden chapter.  <u>Feliciano</u>, 223 F.3d at 109.  In that capacity, he was responsible for controlling the gang's stash of firearms and weapons, which were bought with proceeds from drug sales.  <u>Id.</u> at 114.  Pagan served as warlord under Nelson Gonzalez, the president of the Meriden chapter.  <u>Id.</u> at 109.  As President, Gonzalez had the "authority to order violent 'missions,' including murder, against non-

members and to terminate members found to be in violation of the gang's rules." Id. at 114.

In 1997, Gonzalez and other members of Los Solidos became upset with Edwin Ramos, a 16-year-old fellow member who had purportedly sold a gun provided to him by Gonzalez to the rival Latin Kings. Id. at 109, 124. Based on this allegation, Gonzalez told Pagan that Ramos should be "terminated", which other Los Solidos members understood as an instruction that he should be killed. Id. at 109. Gonzalez entrusted Pagan, along with Ruben Feliciano, who was at that time a probationary member of the gang, with the task of terminating Ramos. Id.

On the evening of March 24, 1997, Pagan and Feliciano drove to an acquaintance's apartment in Meriden, where they picked up Ramos. Id. They then drove to the home of another Los Solidos member, Alex Rivera, and picked him up as well. Id. Following a stop at a store, the four drove to a cemetery in Meriden and exited the car. Id. Feliciano twice asked Ramos what had happened to the gun. Id. Ramos responded that he had lost it. Id. "Feliciano laughed and then shot Ramos once in the head, killing him." Id.

On September 1, 1998, a federal grand jury returned a superseding indictment charging Pagan with conspiring to commit murder in aid of racketeering, in violation of section 1959(a)(5) of title 18 of the United States Code (Count One); committing murder in aid of racketeering, and aiding and abetting, in violation of section 1959(a)(1) and (2) (Count Two); and using and carrying a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of section 924(c)(1) and (2) of title 18 of the United States Code (Count Three). Id. at 107. On February 8, 1999, following a

3

trial by jury, Pagan was found guilty on all three counts.  United States v. Pagan, No. 3:97-CR-00204, Verdict Form (Doc. No. 305).  On April 29, 1999, the court (Dorsey, J.) sentenced Pagan principally to a term of ten years in prison on Count One, life imprisonment on Count Two, and five years in prison on Count Three, with Counts 1 and 2 running concurrently and Count Three running consecutively to those counts.  United States v. Pagan, No. 3:97-CR-00204, Judgment (Doc. No. 307).  After Pagan appealed, the Second Circuit affirmed both his conviction and his sentence.  Feliciano, 223 F.3d 102.

## III.   PROCEDURAL BACKGROUND

Following the Second Circuit's decision, Pagan filed four separate motions between 2002 and 2014 seeking to collaterally attack his sentence in various ways, all of which were denied.  See Order (Doc. No. 6) (describing all four motions in turn).  On April 18, 2016, Pagan again petitioned this court pro se to vacate, set aside, or correct his sentence.  See Pet. for Writ of Habeas Corpus Under § 2255(f) (Doc. No. 1).  The Second Circuit granted his request to file a successive section 2255 motion to raise a claim under Miller.  Mandate of the USCA (Doc. No. 8).  In doing so, the Second Circuit determined that Pagan had "made a prima facie showing that his claim satisfies § 2255(h) and warrants fuller exploration by the district court."  Id. (internal quotations and citations omitted).

This court subsequently ordered counsel to be appointed for Pagan.  Order Appointing Counsel (Doc. No. 11).  Pagan, through counsel, proceeded to move for a stay of these proceeding pending the Second Circuit's resolution of a case that would come to be known as United States v. Sierra, 933 F.3d 95 (2d Cir. 2019), where the court would address Miller's application to defendants between the ages of 18 and 22.

4

Pet.'s Mot. to Stay Proceedings and Extend Deadline for Filing Am. Habeas Pet. (Doc. No. 17). The court granted the stay on December 26, 2018, see Order (Doc. No. 18), and extended it upon Pagan's request on September 23, 2019. Order (Doc. No. 24).

In the meantime, following the Supreme Court's decision in Davis, Pagan filed another, separate habeas petition pro se. See Habeas Corpus Petition Under 28 U.S.C. § 2255(f)(3) (Doc. No. 26). In it, he argued that Davis "seriously undermined the continued validity of [the] judgment in [his] case" because the Supreme Court had struck down the residual clause of section 924(c)(3)(B) as unconstitutionally vague. Id. at 1. The Second Circuit again granted Pagan leave to file a successive section 2255 motion, though it "acknowledge[d] that [Pagan's] § 924(c) conviction might still be supported by a valid predicate, even if the other predicate [was] no longer valid" after Davis. Mandate of the USCA (Doc. No. 29). The Mandate issued on June 19, 2020, and also lifted the stay that had been in place for the year and a half prior. Id. This court then consolidated the briefing schedule for both of Pagan's Petitions. See Order (Doc. No. 32). After being granted several extensions of time,[1] Pagan filed his Amended Motion on June 16, 2021, addressing both the Miller and the Davis issues. Pet. to Vacate.

## IV.  LEGAL STANDARD

Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence

---

[1] Subsequent to the Second Circuit's June 2020 Mandate, Pagan filed a third Motion, this time seeking a sentence reduction under section 3582(C)(1)(A)(i), as amended by the First Step Act. See United States v. Pagan, No. 3:97-CR-00204, Mot. for Sentence Reduction Under 18 U.S.C. § 3585(C)(1)(A)(i) and the First Step Act (Doc. No. 509). The court denied that Motion on April 26, 2021. United States v. Pagan, No. 3:97-CR-00204, Ruling Re: Motion for Sentence Reduction (Doc. No. 549). During the period in which that Motion was pending, however, the court granted multiple requests from Pagan to extend the deadline to file his Amended Motion under section 2255.

was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in

excess of the maximum authorized by law, or is otherwise subject to collateral attack."

28 U.S.C. § 2255(a).  Therefore, relief is available "under § 2255 only for a

constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that

constitutes a fundamental defect which inherently results in a complete miscarriage of

justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States

v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).  The petitioner bears the burden of proving that

he is entitled to relief by a preponderance of the evidence.  See Skaftouros v. United

States, 667 F.3d 144, 158 (2d Cir. 2011).

## V.   DISCUSSION

Pagan argues that Davis and Miller have rendered his conviction on Count Three

and his life sentence on Count Two unconstitutional.  Pet. to Vacate at 1.  The court

addresses each of these arguments in turn.

### A.   Davis

#### 1.   Background

Pagan's argument that the Supreme Court's decision in Davis invalidated his

conviction on Count Three presents a question of law that "neither the Supreme Court

nor the Second Circuit has [squarely] addressed in a binding precedential decision."

United States v. Riley, No. 20-CV-2201, 2021 WL 2186229, at *4 (E.D.N.Y. May 28,

2021).  Pagan was convicted on Count Three for using and carrying a firearm during

and in relation to a crime of violence, and aiding and abetting, in violation of section

924(c).  Section 924(c)(3) defines "crime of violence" for the purposes of that

subsection, separating the definition into two distinct subparts.  First, subparagraph (A)

6

defines the term as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  This is commonly known as the "elements clause." Subparagraph (B) then articulates the "residual clause," alternatively defining a crime of violence as "an offense that is a felony and that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).

In Davis, the Supreme Court held that the residual clause of section 924(c) was unconstitutionally vague, "effectively stri[king] [it] from the statute."  Davis, 139 S.Ct. 2319; Boykin v. United States, No. 16-CV-4185, 2020 WL 774293, at *5 (S.D.N.Y. Feb. 18, 2020).  Thus, post-Davis, for the "purposes of § 924(c) a 'crime of violence' is now defined only" by the elements clause in subparagraph (A).  United States v. McCoy, 995 F.3d 32, 52 (2d Cir. 2021) (emphasis added).  In other words, for a section 924(c) conviction to stand based on a predicate crime of violence, that crime of violence must be "a felony that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Id. (internal quotations and citations omitted) (emphasis in original).

Conspiracy crimes generally do not meet this definition.  See, e.g., id. at 53 ("[i]t is now established that Hobbs Act conspiracy is not a crime of violence within the meaning of § 924(c)"); United States v. Minaya, 841 F. App'x 301, 303 (2d Cir. 2021) ("[i]n light of Davis . . . conspiracy to commit federal kidnapping seems unlikely to satisfy the relevant definition of a crime of violence"); United States v. Brown, 797 F. App'x 52, (2d Cir. 2019) (vacating a section 924(c) conviction based on an underlying crime of

racketeering conspiracy); United States v. Erbo, No., 97-CR-1105, 2020 WL 6802946, at *2 (S.D.N.Y. Nov. 19, 2020) ("[f]ollowing Davis, a mere conspiracy to commit a crime of violence will ordinarily fail to qualify under Section 924(c)'s [elements] clause"). This is because conspiracies are "inchoate offense[s] which need not ripen into a substantive act" involving the use, attempted use, or threatened use of physical force. Erbo, 2020 WL 6802946 at *2 (internal quotations and citations omitted). Indeed, the Second Circuit has been clear that, even when the conspiracy in question is to commit murder, that conspiracy alone is not sufficient to constitute a crime of violence for the purposes of section 924(c). See United States v. Heyward, 3 F.4th 75, 82 (2d Cir. 2021) ("conspiracy to murder is not a qualifying offense under § 924(c)") (emphasis in original).

Thus, if Pagan's Count Three conviction under section 924(c) was based only on the predicate crime he was convicted of in Count One – conspiring to commit murder in aid of racketeering – vacating his Count Three conviction would be required under Davis.[2] But that is not the case here. At trial, the jury was instructed that either the conspiracy to commit murder in Count One or the murder itself in Count Two could qualify as the predicate crime of violence upon which a section 924(c) conviction could rest. "In order to find a defendant guilty as alleged in Count Three," the jury was told, "the government must prove beyond a reasonable doubt each of the following elements as to each defendant:"

> (1) That the defendant Ruben Feliciano, aided and abetted by the defendant Ronald Pagan, knowingly used or carried a firearm;

---

[2] The Government does not dispute this conclusion. See Gov't's Mem. at 4 ("[t]he Government agrees that the VCAR conspiracy charge in Count One is no longer a valid predicate in light of Davis").

(2) That the defendant under consideration did so during and in relation to the commission of a crime of violence as charged in the indictment, namely a conspiracy to commit <u>or</u> the commission of the murder of Edwin Ramos.

<u>United States v. Pagan</u>, No. 3:97-CR-00204, Transcript of Jury Trial at 174 (Doc. No. 473) (emphasis added).

Pagan argues that, because "[t]here plainly were two counts that were presented as alternatives for supporting Count Three's charge of having violated [section] 924(c)," and the jury verdict did not specify which predicate offense served as the basis for his conviction on that Count, "the [c]ourt must presume that the conviction rested upon" the conspiracy charge.  Pet.'s Mem. at 6-7 (internal quotations and citations omitted). Neither the Supreme Court or the Second Circuit have squarely addressed precisely this question: when a section 924(c) conviction rests on multiple predicates, one valid and the other invalid after <u>Davis</u>, can the valid predicate still sustain the conviction?

2.    Analysis

Despite the lack of binding case law specific to this question, "the bulk of authority counsels that," at least in these circumstances, the answer is yes.  <u>Erbo</u>, 2020 WL 6802946, at *2.  In a series of both published and unpublished opinions, the Second Circuit has indicated that, while "[a] § 924(c) conviction resting on multiple predicates does not automatically survive a <u>Davis</u> challenge," the conviction will stand if the valid predicate is "supported by a sufficient factual basis in the record, demonstrating that the defendant . . . [both] committed the predicate offense" and used or carried a firearm during and in relation to that offense.  <u>United States v. White</u>, No. 16-CR-82, 2020 WL 5898680, at *4 (S.D.N.Y. Oct. 5, 2020).

For instance, in <u>Minaya</u> the Second Circuit upheld two section 924(c) convictions that each "rested on one valid predicate crime . . . and one arguably invalid predicate

crime" because there was "no doubt that a rational juror would have convicted [the defendant] on the § 924(c) charge even had [the valid predicate] been the sole predicate charged." Minaya, 841 F. App'x at 303, 305.  In that case, the defendant's pre-Davis Count Six and Twelve convictions under section 924(c) had rested on both Hobbs Act robbery, a crime of violence under the elements clause, and kidnapping, which the Second Circuit "assumed without deciding . . . [was] not a crime of violence." Id. at 303-04.  The court affirmed the defendant's conviction on both Counts, rejecting his argument that it must presume that the section 924(c) convictions rested on the kidnapping conviction – an argument similar to the one Pagan advances here.  Id. at 304-05.  It did so because, given the facts of that particular case, it was clear that there was "no possibility" that a juror could have found the firearm was used in the kidnapping but not the robbery.  Id. at 306 (internal quotations and citations omitted).  The two predicate crimes in both section 924(c) counts had arisen from "singular incidents of criminal conduct: the combined robbery-kidnappings that occurred on December 21, 2010 (Count Six), and on May 15, 2011 (Count Twelve)." Id. at 305.  In both incidents, "a group of which [the defendant] was a part attacked the victim, forced him into a van, and then robbed him.  A firearm was used during both incidents, either to assault or threaten to assault the victim." Id.  Because the predicate offenses were "inextricably intertwined," the court upheld both convictions.  Id.; see also United States v. Vasquez, 672 F. App'x 56, 61 (2d Cir. 2016) (holding that because the firearm was used in furtherance of "an agreement to rob drug dealers and to distribute any recovered narcotics and narcotics proceeds . . . the § 924(c) verdict undoubtedly rests on a valid

drug-trafficking predicate" because "the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy").

Similarly, in United States v. Eldridge, 2 F.4th 27 (2d Cir. 2021), the Second Circuit upheld the defendant's section 924(c) conviction on direct appeal using a similar logic.[3]  The defendant in that case had been convicted by a jury and sentenced before Davis, and argued on appeal that his Count Seven conviction under section 924(c) must be vacated in light of the Supreme Court's decision.  Eldridge, 2 F.4th at 30.  The "three possible predicate offenses" for his Count Seven conviction included "kidnapping in aid of racketeering (Count Five) and either conspiracy to commit or attempt to commit Hobbs Act robbery (Count Six).  Id. at 35.  Although it was clear that the conspiracy conviction could no longer support the section 924(c) charge post-Davis, and the parties took "the position that kidnapping in aid of racketeering [was] no longer a crime of violence" as well, the court still upheld the conviction because the third predicate – attempted Hobbs Act robbery – remained a crime of violence under the elements clause.  Id. at 35-36.  As in Minaya, the court reached this conclusion only after determining that it was clear "the jury would have returned a guilty verdict on Count Seven even if it had been instructed that only attempted Hobbs Act robbery was a valid predicate under § 924(c)."  Id. at 39.  At trial, "[t]he testimony regarding [the defendant's] participation in the robbery [had shown] that: he had a gun with him when planning the robbery . . . [and] pointed a gun at [a victim] to force him onto the ground before abducting him into the truck."  Id.  Based on this evidence, the court concluded that his

---

[3] Eldridge was decided eight days after Pagan filed his Amended Motion.  In its Opposition, the Government relies in part on Eldridge to argue that Pagan's Motion should be denied.  Gov't's Mem. at 7-8.  Pagan did, however, have the opportunity to address the case in his Reply.  Pet.'s Reply at 4-5.

actions were "entwined – with the agreement to commit the robbery, the attempt to commit the robbery, the kidnapping, and [his] brandishing of the gun forming part of a single narrative." Id. As such, it was "inconceivable that the jury could have returned a guilty verdict on [Counts Five and Six] (as it did on all of them) without concluding that, at minimum, [the defendant] attempted to rob [the victim] of his drugs, and that he did so using a gun." Id.; see also United States v. Walker, 789 F. App'x 241 (2d Cir. 2019) (rejecting an argument challenging a section 924(c) conviction "rest[ing] on convictions for both conspiracy and substantive Hobbs Act robbery . . . as meritless" because "substantive Hobbs Act robbery [remains] a crime of violence" after Davis) (emphasis in original).

Pagan argues that, because Eldridge was decided on direct appeal and applied a plain-error standard he contends is not applicable here, it is distinguishable. Pet.'s Reply at 4-5. But that argument is belied by the fact that both the Second Circuit and numerous District Courts have applied Eldridge or similar reasoning to habeas petitions before them. In Riccardi v. United States, 859 F. App'x 590 (2d Cir. 2021), decided just two days after Eldridge, the Second Circuit applied its logic to an appeal of a District Court denial of a Motion under section 2255. The facts of that case were not dissimilar to the facts at hand here. The defendant had been convicted under section 924(c) after "the District Court instructed the jury that it could consider . . . [either] the Hobbs Act robbery or Hobbs Act robbery conspiracy" as the predicate offense. Id. at *1. The jury returned a general verdict, failing to specify whether his section 924(c) convictions were premised on the conspiracy, the robbery, or both. Id. Although the defendant was convicted of both the conspiracy and the robbery, he argued – as does Pagan here –

that because "it [was] impossible to tell" whether the jury's section 924(c) verdict "rested on the sufficient or the insufficient . . . predicate, vacatur [was] required."  Id.

Citing Eldridge, the Second Circuit rejected this claim.  "The jury found both offenses proved beyond a reasonable doubt," it reasoned, "and both offenses related to the same facts."  Id.  "Moreover, the jury specifically found . . . that the firearm was both brandished and discharged, further demonstrating that [the defendant's] firearms convictions rested at least in part on an actual robbery, not merely a conspiracy to rob."  Id.  Based on those facts, the court concluded that "there [was] no possibility that the § 924(c) convictions rested solely on the (invalid) Hobbs Act robbery conspiracy predicate and not also on the (valid) substantive Hobbs Act robbery offense."[4]  Id.

District Courts have reached similar outcomes, including in cases identical to Pagan's case where the jury was instructed that a section 924(c) conviction could rest on either a conspiracy to commit murder or the substantive murder charge itself.  These cases have almost universally interpreted the Second Circuit case law discussed above

---

[4] Two other Second Circuit cases that did vacate section 924(c) convictions are clearly distinguishable here.  First, in Heyward, the court held that a section 924(c) conviction predicated on murder conspiracy (an invalid offense post-Davis) and narcotics conspiracy (a valid offense) could not stand because, inter alia, there was "a distinct factual separation between the gang violence [that led to the murder conspiracy charge] . . . and [the] charged narcotics activity."  Heyward, 3 F.4th at 83.  In other words, when the defendant "accidently shot his compatriot . . . it was in the context of an altercation spurred on by a territorial gang rivalry, an incident that a jury could reasonably conclude was unrelated to the procurement or distribution of drugs."  Id.  Because the evidence at trial indicated that the guns in question were related to the gang activity, the court "[could not] agree that the murder and drug conspiracies were 'inextricably intertwined.'"  Id. (internal quotations and citations omitted).

Similarly, in United States v. Biba, 788 F. App'x 70 (2d Cir. 2019), the court vacated a section 924(c) conviction predicated on both conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery.  As part of the plea agreement, the defendant was convicted on only the conspiracy offense, and the attempted Hobbs Act robbery charge was dismissed.  Biba, 788 F. App'x at 71-72.  Although the section 924(c) charge in the indictment was predicated on both the conspiracy and the attempt, the defendant – in contrast to the defendant in Boykin – admitted only to the former as part of his plea deal.  Because he "only allocated to a Hobbs Act robbery conspiracy as it relate[d] to the § 924(c) count, [his] § 924(c) conviction [had to] be vacated under Davis").  Id. at 72.

as "plainly reject[ing] the theory that . . . the presence of one invalid predicate automatically invalidates [a] § 924(c) conviction."  Riley, 2021 WL 2186229, at *4. Indeed, numerous District Courts in this Circuit have consistently held against petitioners like Pagan who, post-Davis, have moved to vacate their section 924(c) convictions predicated on convictions for both murder conspiracy and substantive murder.  See, e.g., Riley, 2021 WL 2186229, at *5 (holding that "where the murder conspiracy and murder charges involve the same murder, the jury's finding of guilt on the murder count ought to end the analysis as it eliminates any reasonable possibility that the corresponding firearm conviction could have rested only on the conspiracy count . . . . there is simply no reasonable interpretation of the facts under which the jury, having found beyond a reasonable doubt that the defendants committed the specific killings . . . would have found that a firearm was used only in connection with the conspiracies to murder but not the actual murders") (emphasis in original); United States v. Dhinsa, No. 97-CR-672, 2020 WL 7024377, at *3 (E.D.N.Y. Nov. 30, 2020) ("[t]he notion that [the defendant's] conviction under § 924(c) was predicated only on a conspiracy to commit murder, but not on his role in intentionally committing that same murder, is absurd") (emphasis in original); Boykin, 2020 WL 774293, at *1, *3 (upholding a section 924(c) conviction premised on conspiracy to murder and murder when both those predicate offenses were dismissed pursuant to a plea agreement but, as part of the plea, the defendant had admitted to participating in the murder); Sessa v. United States, No. 92-CR-351, 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020) (finding "substantial evidence [the defendant] shot [the victim] in the head three times with a revolver" and concluding that "[n]o rational jury would return a verdict of guilty on

a § 924(c) charge predicated on two conspiracies to commit murder with a firearm and the substantive offense of murder committed with a firearm, and not return the same verdict if predicated only on the murder committed with a firearm"); United States v. Gomez, No. 97-CR-696, 2021 WL 3617206, at *3 (S.D.N.Y. Aug. 16, 2021) (finding that the defendant's "section 924(c) conviction undoubtedly rest[ed] on a valid predicate" when that conviction was predicated "on his conspiracy to murder and substantive murder of [the victim]" and "the jury [had] found it proven, beyond a reasonable doubt, that [the] defendant had committed . . . [the] substantive murder" by "provid[ing] a subordinate with a firearm, direct[ing] him to murder [the victim], and pa[ying] him thousands in compensation" afterwards); Erbo, 2020 WL 6802946 (holding that "murder is sufficient to sustain [the defendant's] convictions even in the absence of the conspiracy predicates" because "[t]he jury found beyond a reasonable doubt that [he] committed those murders . . . necessarily predicat[ing] each of [his] Section 924(c) convictions, at least in some part, on its finding that he was guilty of a substantive murder in each instance"); Mayes v. United States, No. 12-CR-385(2), 2021 WL 3111906, at *8 (E.D.N.Y. July 21, 2021) ("[a]lthough the verdict sheet in this case did not require the jury to specify which racketeering acts charged in Count One formed the basis of its verdict on [the section 924(c) Count], there is no doubt that the jury predicated its verdict on [that count] at least in some part on the racketeering acts of attempted murder") (internal quotations and citations omitted).

In the face of this overwhelming, though admittedly non-binding precedent, Pagan argues first that this court should instead follow the ruling in United States v. Rodriguez, No. 94-CR-313, 2020 WL 1878112 (S.D.N.Y. Apr. 15, 2020), where the

court did vacate a section 924(c) conviction predicated on one count of conspiracy to murder, two counts of murder, and one count of attempted murder.  In the alternative, he urges this court to conclude that murder is not a crime of violence.  The court does not find either of these arguments persuasive.

First, Rodriguez was decided prior to the vast majority of the cases cited above. In that case, the court determined that, despite the defendants having been convicted on both murder offenses and the attempted murder offense, it could not know from the record before it "which offense or offenses the jury identified as the firearms count predicate."  Rodriguez, 2020 WL 1878112, at *9.  In addition, at trial "the Government [had] pled, undertook to prove, and argued to the jury every theory of criminal liability the evidence and law allowed" against the defendants on the murder and attempted murder charges, including that they could be liable "under that hybrid of substantive and conspiracy law, the Pinkerton theory."  Id.  Because "the jury could have decided the case in accordance with the Pinkerton theory of liability," and, in the court's opinion "the Davis decision, retroactively effective, would clearly disqualify jury verdicts of substantive guilt based on the Pinkerton theory of liability," the court could not even be certain that the murder and attempted murder convictions qualified as crimes of violence.  Id. at *16-17.

Rodriguez has since been overtaken by the weight of authority discussed above and become the "minority view" among District Courts in this Circuit.  Gomez, 2021 WL 3617206, at *4.  It has also been called into question in the process, including by the Second Circuit in a non-binding decision.  See, e.g., United States v. Blanco, 811 F. App'x 696, 701 n.2 (2d Cir. 2020) (upholding a section 924(c) conviction premised on a

bank robbery conviction and rejecting the defendant's argument that her conviction "must be vacated because she may have been convicted on a theory of <u>Pinkerton</u>, or co-conspirator, liability" because "[e]ven if the jury found Blanco liable for bank robbery based on <u>Pinkerton</u>, as opposed to under an aiding-and-abetting theory of liability, that would not somehow transform her conviction for <u>substantive</u> bank robbery into one for bank robbery <u>conspiracy</u>, implicating the residual-clause concerns explored in <u>Davis</u>") (emphasis in original); <u>see also</u> <u>Gomez</u>, 2021 WL 3617206, at *5 (noting that "[a] <u>Pinkerton</u> charge, like an aiding and abetting charge, provides only an alternative theory of substantive liability"); <u>Abouhalima v. United States</u>, No. 20-CV-834, 2020 WL 3318031, at *2 ("the <u>Pinkerton</u> instruction does not transform movant's conviction for assaulting a federal official into a conspiracy to do so").[5]

Moreover, the case at hand is readily distinguishable from <u>Rodriguez</u> on the facts.  The court in <u>Rodriguez</u> distinguished <u>Walker</u>, discussed <u>supra</u> at 12, by noting that, in that case, "the defendants' physical participation in the substantive robberies in question [did] not appear to have been contested."  <u>Rodriguez</u>, 2020 WL 1878112, at *14.  "[T]he evidence in <u>Walker</u> identified the defendants as participants in a series of daytime robberies that culminated in charges of Hobbs Act robbery."  <u>Id.</u> (internal quotations and citations omitted).  When that was the case, the <u>Rodriguez</u> court conceded, a "reviewing court [would have] no difficulty in concluding that a defendant's § 924(c) conviction <u>rested on</u> convictions for both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence."  <u>Id.</u> (internal quotations and citations

---

[5] The Second Circuit has also held in a binding opinion that, post-<u>Davis</u>, "a § 924(c) conviction predicated on aiding and abetting a crime of violence is equivalent to one predicated on the commission of a crime of violence as a principal."  <u>United States v. Waite</u>, 12 F.4th 204, 212 (2d Cir. 2021).

omitted) (emphasis in original).  In contrast, after conducting a searching factual inquiry into the particular circumstances of Rodriguez, the court concluded it could not be so certain about the role the defendants in that case played in the substantive offenses.  Id. at *17.

That is not the case here.  Pagan was convicted of both murder conspiracy and aiding and abetting substantive murder.  These offenses were inextricably intertwined: Gonzalez "entrusted" Pagan "with the task of 'terminating' Ramos."  Feliciano, 223 F.3d at 109.  In order to carry out that order, Pagan picked up Ramos and drove with Feliciano and Rivera to a cemetery, where all four exited the vehicle and Feliciano proceeded to shoot Ramos in the head.  At least on these facts, "where the murder conspiracy and murder charges involve the same murder," and the two charges are "entwined," the "jury's finding of guilt on the murder . . . ends the analysis as it eliminates any reasonable possibility that the corresponding firearm conviction could have rested only on the conspiracy count."  Eldridge, 2 F.4th at 39; Riley, 2021 WL 2186229, at *5. Because it is "inconceivable that the jury could have returned a guilty verdict" on Counts One and Two "without concluding that, at minimum," that the section 924(c) conviction rested in part on the Count Two murder offense, Pagan's argument that "the [c]ourt must presume that the conviction rested upon" the conspiracy charge must fail.  Eldridge, 2 F.4th at 39; Pet.'s Mem. at 6-7 (internal quotations and citations omitted).

### 3.    Murder as a Crime of Violence

Pagan also argues that murder under Connecticut General Statutes section 53a-54a is not a crime of violence.  Pet.'s Mem. at 7-8.  Section 53a-54a states that "[a] person is guilty of murder when, with intent to cause the death of another person, he

causes the death of such person or of a third person or causes a suicide by force, duress, or deception."  CONN. GEN. STAT. § 53a-54a.  Pagan argues that, because "the statute offers alternatives to the use of 'force,' i.e., it is divisible, the Court could . . . conclude that a Connecticut state murder is not categorically a crime of violence because 'force' is not a required element."  Pet.'s Mem. at 7-8.

This argument is foreclosed both by common sense and the Second Circuit's holding in United States v. Sierra, 782 F. App'x 16, 20-21 (2d Cir. 2019).  The Second Circuit has "repeatedly treated it as self-evident that under New York law attempted murder is a crime unmistakably involving an attempted use of physical force."  Sierra, 782 F. App'x at 20 (internal quotations and citations omitted) (emphasis added).  It naturally "follows that murder [itself] is a crime involving the use of force" that meets the definition of a crime of violence in section 924(c) post-Davis.  Id.; see also Riley, 2021 WL 2186229, at *3 ("[u]nder this post-Davis standard, it is established . . . [that] murder in aid of racketeering continue[s] to qualify as [a] crime[ ] of violence for § 924(c) purposes"); Boykin, 2020 WL 774293, at *8 ("it is impossible not to conclude that the intentional causation of death as required by [New York's murder statute] necessarily involves the use of physical force").

Though each of these cases involved murder under New York, not Connecticut law, the court is compelled to reach the same conclusion here.  "To determine whether an offense is a crime of violence . . . [w]here the state criminal statute is divisible . . . courts may employ what is known as the modified categorical approach."  Boykin, 2020 WL 774293, at *5 (internal quotations and citations omitted).  This approach "permits the court to consult a limited set of approved documents," including jury instructions, "to

determine which elements formed the basis of the defendant's conviction."  Id.  The

court then proceeds to "identify the minimum criminal conduct necessary for conviction

under [the] particular statute" to determine whether the offense "qualif[ies] . . . as a

crime of violence."  Id. at 6.

Here, the modified categorical approach shows that the first portion of section

53a-54a provides the relevant elements.  Judge Dorsey, quoting that portion of section

53a-54a, instructed the jury that:

> "A person is guilty of murder when, with intent to cause the death of another
> person, he causes the death of such person or of a third person."  It is the
> instructions relating to this state offense that you must follow in considering
> the murder and conspiracy to commit murder charges contained in Counts
> One and Two.
>
> There are two essential elements in the crime of murder.  First, the death of
> one person must be caused by another person.  Second, the person
> causing the death of the person must have done so with the intent to cause
> the death of that person or of a third person, well, that's not involved in this
> case, it's the death of the person in question, and that is, in this instance,
> the victim, Mr. Edwin Ramos.

United States v. Pagan, No. 3:97-CR-00204, Transcript of Jury Trial at 168 (Doc. No.

473).  The New York statute that the Boykin court found clearly met the elements clause

of section 924(c) involved identical language: in particular, it provided that "'[a] person is

guilty of murder in the second degree when . . . [w]ith intent to cause the death of

another person, he causes the death of such person or of a third person.'"  Boykin, 2020

WL 774293, at *6 (quoting N.Y. Penal Law § 125.25(1)).  As the Boykin court noted, the

Second Circuit in Sierra had already "specifically considered and rejected" the argument

that "murder was not a categorical crime of violence under New York law."  Id. at *7.  In

doing so, it also considered and rejected the argument that since "murder can be

committed by omission . . . the use of force is not an element of [the] murder

convictions." <u>Sierra</u>, 782 F. App'x at 20.  The court held that because "'the use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly'", murder under New York law was a crime of violence under the elements clause of section 924(c).  <u>Id.</u> at 20-21.  This court is obliged to reach the same conclusion as it relates to the Connecticut statute here.

                4.      Conclusion

For the reasons stated above, Pagan's Amended Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence is denied as to his argument that his conviction under Count Three is unconstitutional in light of <u>Davis</u>.

        B.     <u>Miller</u>

Pagan also argues that his "life sentence for VCAR murder is unconstitutional because [he] was 19 years old at the time of his offense and his mandatory life sentence, imposed without any consideration of his age, is cruel and unusual."  Pet. to Vacate at 1.  In particular, he argues that the Supreme Court's decision in "<u>Miller</u> should be expanded . . . to protect adolescents" under the age of 21 "from mandatory life imprisonment."  Pet.'s Mem. at 8.

The court is sympathetic to these arguments.  Indeed, in <u>Cruz v. United States</u>, No. 11-CV-787, 2018 WL 1541898, at *25 (D. Conn. Nar. 29, 2018), <u>vacated</u>, 826 F. App'x 49 (2d. Cir. 2020), this court held that "<u>Miller</u> applies to 18-year-olds and thus that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for offenders who were 18 years old at the time of their crimes."  In doing so, it comprehensively addressed evolving societal standards and scientific evidence around adolescent brain development to conclude that "18-year-olds should be treated different from fully mature adults."  <u>Cruz</u>, 2018 WL 1541898, at *22.  It is

notable that, in arguing for <u>Miller</u> to be expanded, Pagan relies heavily on the expert testimony of Professor Laurence Steinberg – the same testimony this court relied on in deciding <u>Cruz</u>.  Compare Pet.'s Mem. at 13-17, <u>with</u> <u>Cruz</u>, 2018 WL 1541898.

This court's opinion in <u>Cruz</u> was vacated and remanded by the Second Circuit. In <u>United States v. Sierra</u>, 933 F.3d 95, 97 (2d Cir. 2019), the Second Circuit held that, "[s]ince the Supreme Court has chosen to draw the constitutional line at the age of 18 for mandatory minimum life sentences," imposing those sentences on defendants between 18 and 22 years old did not violate the Eighth Amendment.  The Circuit applied <u>Sierra</u> to the Government's appeal in <u>Cruz</u>, reiterating that "mandatory life sentences for individuals eighteen years old or older do not violate the Eighth Amendment."  <u>Cruz</u>, 826 F. App'x at 51.  Unless and until the Supreme Court or Second Circuit revisits these cases, this court is bound by them.

For this reason, Pagan's Amended Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence is denied as to his argument that his life sentence on Count Two is unconstitutional.

## VI.    CONCLUSION

For the above stated reasons, Pagan's Amended Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence (Doc. No. 40) is denied.


**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of October 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

22